Sylvia NILSON, Claimant and Appellee,

v.

CLAY COUNTY and South Dakota Municipal League Workers Compensation Fund, Appellants.

No. 18771.

Supreme Court of South Dakota.

Considered on Briefs Nov. 30, 1994.

Decided July 19, 1995.

Richard D. Hagerty of Hagerty Law Offices Yankton, for appellee.

Lori Purcell Fossen of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellants.

AMUNDSON, Justice.

Clay County and the South Dakota Municipal League Worker's Compensation Fund (Clay County) appeal the trial court's order finding Sylvia Nilson (Nilson) was a "seasonal employee," and modifying the South Dakota Department of Labor's (Department) calculation of worker's compensation benefits. We reverse and remand.

### FACTS

Nilson and Clay County stipulated to the relevant facts of this case. On February 5, 1992, Nilson was appointed election judge for the Irene Town Precinct pursuant to SDCL 12–15–1. Nilson's term was for two years and covered any general or local election.

On February 20, 1992, after attending an instructional meeting, Nilson, age 76, suffered injuries when she fell in the parking lot of the Clay County Courthouse. Nilson filed a personal injury suit against Clay County, which was converted into a worker's compensation claim. Clay County paid over $20,000 in medical expenses associated with Nilson's injury.

As an election judge, Nilson received $15.00 for attending the instructional meeting. If she had been able to perform as judge over the primary election, she would have received $75.00. She would have also received $75.00 for the June primary and $75.00 for the general election in the fall of 1992. As judge for the 1990 elections, Nilson received $153.64 as total compensation for her duties.

Nilson filed a petition for hearing before Department, seeking worker's compensation benefits for her injuries suffered in the scope of her employment. Nilson argued she was a "volunteer" pursuant to SDCL 62–1–5.1, entitling her to the maximum benefits allowed by the worker's compensation statutes.[1]

Contrary to Nilson's position, Clay County argued that she was an "employee" under SDCL 62–1–3.[2] Department agreed with

---

1. SDCL 62–1–5.1 provides:

   Volunteer workers rendering services in or for any agency, department, institution or instrumentality of the state or of any of its political subdivisions, including but not limited to counties, townships, school districts or municipalities, whose services have been duly recommended to the officer or governing body responsible for employment of personnel for the respective entity and duly appointed thereto by such officers or governing body, shall for purposes of this title be deemed employees of the state or the political subdivision, as the case may be. The appointments shall be entered into the official records or minutes of the entity.
   *In the event of injury or death for the purposes of computing compensation, said volunteer uncompensated workers shall be considered to be earning a wage that would entitle them to the maximum compensation for death or injury allowable under this title, but in no event shall payments to volunteer uncompensated workers exceed the maximum limitations for benefits as set out in this title.* (Emphasis added.)

2. SDCL 62–1–3 provides:

   As used in this title, unless the context otherwise plainly requires, the term "employee" shall mean every person, including a minor, in the services of another under any contract of employment, express or implied, (and including as to a deceased employee, his personal representative, dependents, and other persons to whom compensation may be payable), except:

   . . . . .

   (2) Any official of the state or of any subdivision of government elected or appointed for a regular term of office or to complete the unexpired portion of any such term, provided that the governing bodies of the various subdivisions *may elect to treat officials of the subdivisions as employees for the purposes of this section.* (emphasis added).
   Any employer performing labor incidental to his occupation who has elected to proceed under the provisions of § 58–20–3 by purchasing workers' compensation insurance to cover himself, may be deemed to be an employee under this section; provided, however, that

Clay County and awarded compensation at the rate of $4.62 per week, based on her actual earnings as an "employee."[3] Department calculated Nilson's earnings as the amount of compensation she would receive for the three elections and the election school ($75 + $75 + $75 + $15 = $240) and divided that amount by 52 weeks for a total of $4.62 per week.

Nilson appealed Department's order to the circuit court. The sole issue raised by Nilson was her classification as an "employee." The circuit court affirmed Department's "employee" classification of Nilson pursuant to SDCL 62-1-3. Nilson did not appeal the classification issue to this court. The circuit court then calculated Nilson's benefit based on "seasonal employment" under SDCL 62-4-27.[4] The trial court's benefit computation took Nilson's average earnings for overseeing elections, which was $75, then multiplied that number by 200 and divided by 52. This figure resulted in an average week's earnings of $288.46. At no time before Department, or on appeal, did either party argue Nilson was a "seasonal employee," or that her worker's compensation benefits should be so calculated.

Clay County appeals the circuit court's award of benefits pursuant to SDCL 62-4-27.

## ISSUE

WHETHER THE TRIAL COURT ERRED IN CALCULATING NILSON'S WORKER'S COMPENSATION BENEFITS UNDER SDCL 62-4-27 (SEASONAL EMPLOYMENT)?

## STANDARD OF REVIEW

The standard of review of an administrative appeal is governed by SDCL 1-26-36 and 37. *Thomas v. Custer State Hosp.*, 511 N.W.2d 576, 578 (S.D.1994); *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 357 (S.D.1992); *In re Northwestern Bell Tel. Co.*, 382 N.W.2d 413, 415-16 (S.D.1986). The issue to be resolved in this case is essentially a question of law. SDCL 1-26-36 provides that questions of law are fully reviewable. *Thomas*, 511 N.W.2d at 579; *Brown v. John Morrell & Co.*, 511 N.W.2d 277, 278 (S.D. 1994); *Caldwell*, 489 N.W.2d at 357; *Permann v. Dep't of Labor, Unemp. Ins. Div.*, 411 N.W.2d 113, 117 (S.D.1987). "It is well within our province to interpret statutes without any assistance from the administrative agency." *Permann*, 411 N.W.2d at 117. We review the administrative agency's decision, as did the circuit court, unaided by any presumption that the circuit court's decision was correct. *Thomas*, 511 N.W.2d at 579 (citations omitted). Hence, we give no deference to either the agency or the circuit court conclusions of law.

## DECISION

The sole issue appealed to the circuit court by Nilson was her classification as an "employee." SDCL 62-4-27, which established the wage calculation for "seasonal employment," was never argued before Department nor on appeal to the circuit court. In *Meade Educ. Ass'n. v. Meade School Dist. 46-1*, 399 N.W.2d 885, 889 (S.D.1987), this court stated that trial courts "should not pass upon issues of fact and conclusions of law which have not been decided by the agency[.]" The trial court was misguided by extending its review and fashioning a remedy outside of the classi-

---

nothing in this section shall be construed as to affect that person's rights as an employer for purposes of §§ 62-3-1 and 62-3-2.

3. Department calculated Nilson's benefits under SDCL 62-4-28, which provides:

As to an employee who earns either no wage or less than the earnings of adult day laborers in the same line of employment in that locality, the average weekly wages shall be reckoned according to the average weekly wages of adults of the same class in the same or, if that is impracticable, then of neighboring employments.

4. SDCL 62-4-27 provides:

As to employees in employments in which it is the custom to operate for a part of the whole number of working days in each year, the average weekly wages shall be ascertained by multiplying the employee's average day's earnings by number of days which it is customary in such employment to operate during a year, but not less than two hundred, and dividing by fifty-two.

fication issue. Nevertheless, the issue on appeal before this court is whether or not Nilson's benefits should be calculated under "seasonal employment," SDCL 62–4–27.

■ When interpreting the law of worker's compensation, three principles are considered. *Caldwell,* 489 N.W.2d at 364. First, " 'proceedings under the Work[er]'s Compensation Law ... are purely statutory, and the rights of the parties and the manner of procedure under the law must be determined by its provisions.' " *Id.* (quoting *Chittenden v. Jarvis,* 68 S.D. 5, 8, 297 N.W. 787, 788 (1941)). Second, "we must assume that the legislature meant what the statute says and therefore give its words and phrases a plain meaning and effect." *Caldwell* at 364 (citing *Dubbelde v. John Morrell & Co.,* 473 N.W.2d 500 (S.D.1991)). And finally, all ambiguity should be liberally construed in favor of injured employees. *Caldwell* at 364 (citing *Mills v. Spink Elec. Co-op.,* 442 N.W.2d 243 (S.D.1989)). We will address each step.

■ The first step of the *Caldwell* analysis requires statutory authority for the right to receive and the procedure to follow in awarding worker's compensation. Clearly, Nilson's right to an award was recognized and provided for by Department's order under SDCL 62–1–3, determining Nilson's wage at $4.62 per week. Although admittedly a nominal sum, Nilson's expected compensation as an election judge would have been a total of $225 per year. In compensating her for lost wages, Department's calculation of $4.62 per week was accurate.

Step two of the *Caldwell* test requires statutory interpretation in accordance with the "plain meaning" of the language. 489 N.W.2d at 364. In its memorandum opinion, the trial court did not define "seasonal employment," but stated: "Nilson's employment was intermittent or seasonal, since she was required only to perform her services when an election was held.... When a person works in an employment in which it is cus-

tomary not to operate throughout the working days of the year, [SDCL 62–4–27] applies."

Although not defined by statute in South Dakota, the term has been defined by our neighboring jurisdiction, Nebraska. "Seasonal employment" refers to those occupations "which can be carried on only at certain or fairly definite seasons or portions of the year, and does not include such occupations as may be carried on throughout the entire year." *Elrod v. Prairie Valley, Inc.,* 214 Neb. 697, 335 N.W.2d 317, 319 (1983) (citing *Hiestand v. Ristau,* 135 Neb. 881, 887, 284 N.W. 756, 757 (1939)). The court in *Elrod* held that corn sorting and husk removal in conjunction with the drying of corn was not determinative in any given season. *Id.* Therefore, it was not seasonal employment.

Similarly, the court in *American Mut. Ins. Co. v. W.C.A.B.,* 108 Pa.Cmwlth. 345, 530 A.2d 121 (1987) stated:

> Seasonal occupations logically are those vocations which cannot, from their very nature, be continuous or carried on throughout the year, but only during fixed portions of it. On the other hand, labor or occupation possible of performance and being carried on at any time of the year, or through the entire twelve months, is certainly not seasonal.[5]

*Id.* at 128.

Nilson's employment, although intermittent, is carried on "throughout the year." SDCL 62–4–27 is silent as to language of "intermittent" employment. Nilson was appointed for a set term of two years to oversee both general and county elections. Such a position is not in any way dependent upon the "seasons," as special county or state elections could arise at any time "throughout the year." *See* SDCL 7–18A–13, –19. Therefore, Nilson's position as an election judge is not "seasonal employment" under SDCL 62–4–27. In reading SDCL 62–4–27, we cannot

---

5. Consistent with these definitions, this court has interpreted "seasonal employment" in relation to construction workers, agricultural threshers, growers and pickers. *See Jacobson v. Strong & Waggoner,* 66 S.D. 552, 287 N.W. 41 (1939) (road worker); *Lang v. T.J. Tobin Const. Co.,* 66 S.D. 365, 283 N.W. 169 (1938) (gravel hauler); *Humphreys v. Frank Schuknecht, Jr., Const. Co.,* 66 S.D. 112, 279 N.W. 246 (1938) (construction worker); *Meyer v. Roettele,* 64 S.D. 36, 264 N.W. 191 (1935) (thresher); *Larson v. Johnson,* 71 S.D. 251, 23 N.W.2d 449 (1946) (corn picker).

agree with the trial court's classification to this effect.

The third and final step in the *Caldwell* analysis requires that worker compensation statutes be liberally construed in favor of injured employees. 489 N.W.2d at 353. Although we agree with this public policy, the purpose behind the worker's compensation system cannot be lost. "The overall purpose ... is to compensate an employee and dependents for the loss of income-earning ability where the loss is caused by injury[.]" *Id.* at 362.

We agree the purpose behind worker's compensation recognizes Nilson's work-related injuries and favors compensation. Nevertheless, Nilson should not receive a windfall. Calculating her benefits under SDCL 62–4–27, seasonal employment, would cause such a result. Furthermore, Nilson did not file a notice of review on the circuit court's "employee" finding. *See Day v. John Morrell & Co.*, 490 N.W.2d 720, 724 (S.D.1992) (issue waived through claimant's failure to comply with notice of review requirements). The language of SDCL 62–4–27, along with the purpose of worker's compensation, requires us to find the trial court erred in calculating Nilson's benefits.

We reverse and remand to reinstate Department's order.

MILLER, C.J., SABERS and KONENKAMP, JJ., and WUEST, J., Retired, concur.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted, did not participate.